## Belle Wilcox, For Use, etc., Plff. in Err., *v.* Nason Rowley et al.

Where a party about to take an assignment of a judgment note applies to the maker and is informed by him that the note is good and subsequently purchases the same on the faith of such representation, the maker is estopped, as against such party or his assignee, from setting up a failure of the original consideration of the note.

(Argued May 26, 1887. Decided October 3, 1887.)

July Term, 1887, No. 61, E. D., before GORDON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ. Error to the Court of Common Pleas of Warren County to review a judgment for defendants upon an issue formed upon the opening of a judgment and plea of payment. Reversed.

The assignments of error were based upon the admissions of certain offers of evidence by the plaintiff, upon the answers to the points as stated below, and the action of the court in directing a verdict for defendants.

On the trial, plaintiff proposed to prove by Daniel Rhodes that prior to Clark's purchase of the judgment in question from the witness, that he told Clark that Nason Rowley, one of the defendants, had told him, the witness, that the judgment was all

NOTE.—The same determination under similar circumstances is found in Humphrey v. Tozier, 154 Pa. 410, 26 Atl. 542.

right and was good; to be followed by evidence that it was on the strength of that representation that Clark purchased the judgment and paid his money for it; for the purpose of showing an estoppel.

Objected to as incompetent for the purpose. Objection sustained and testimony rejected. (First assignment of error.)

Plaintiff further proposed to prove by Clark that, previous to his purchase of the judgment from Daniel Rhodes, Daniel Rhodes informed him that Nason Rowley, previous to Rhodes's purchase, informed him that the judgment was good, all right, and no incumbrances against it; and that he, Rhodes, purchased on the faith of that declaration and that the witness made the purchase, after the declaration to him by Rhodes, of what Rowley had said, for a valuable consideration and on the strength of that declaration; and that had it not been for the declaration communicated to him by Rhodes, he would not have purchased the judgment; for the purpose of establishing an estoppel, first, so far as Rhodes is concerned and then extending it down to and covering the purchase of Clark.

Objected to as incompetent. Objection sustained. (Second assignment of error.)

Plaintiff (under the evidence now given, that Mr. Rhodes informed Nason Rowley that if he purchased the judgment, he was going to let Mr. Clark have it) now renewed the proposition contained in the third offer of the plaintiff's testimony, to prove that Mr. Rhodes, prior to his sale of the judgment to Mr. Clark, informed Mr. Clark what Nason Rowley told him about the judgment before he purchased it; that Nason Rowley told him that the judgment was good, and that there was nothing against the judgment or against them, the defendants; and on the faith of that representation, the purchase was made by Mr. Clark, and the money paid.

Objected to as incompetent. Objection sustained, testimony rejected. (Third assignment of error.)

The plaintiff requested the court to charge:

1. That if, prior to the purchase of the judgment by Rhodes from Parker, Rhodes went to Nason Rowley to inquire about the judgment, and whether there was anything against it, and if there was not he would purchase it, and intended to sell it to Clark, and in answer to the inquiry Rowley informed him that

it was good, and there was nothing against it, and on the faith of that representation, Rhodes purchased, and paid a valuable consideration for it, Rowley is now estopped from showing that any encumbrance existed against the land, for which the judgment was given, or from showing any defense to the payment of the judgment.

*Ans.* Whether correct or not in the abstract, we say to you that there is no evidence that estops the defendant from setting up the failure of consideration of the judgment. (Fourth assignment of error.)

2. As the judgment note provided for the privilege of paying the whole or any part thereof before maturity it was the duty of defendants to pay the Harmon mortgage when required, and they can defend against the payment of the judgment only to the amount of the Harmon mortgage.

*Ans.* This point is answered in the negative. (Fifth assignment of error.)

The court, Brown, P. J., charged the jury as follows:

On the 16th of April, 1881, the defendants, E. D. and Nason Rowley, executed and delivered to the plaintiff, Belle Wilcox, a judgment note for $1,378.12, payable in seven years from date with interest annually, with the privilege of paying the whole or any part before the maturity of the note. Upon this note a judgment was entered in the court on the 25th of April, 1881. This judgment was assigned by the plaintiff to Charles Parker in May, 1881, and by Charles Parker to Daniel Rhodes in February, 1883, and by Daniel Rhodes to C. W. Clark, the present use plaintiff, on the 21st of February, 1883.

The defendants made application to open the judgment, alleging that the consideration of it had failed. In order that this question might be tried before a court and jury, the judgment was opened, and it is now before us for disposition. As against the judgment the defendants allege, and the undisputed evidence is, that this judgment of $1,378.12 was given as the consideration of some 39 or 40 acres of land, that was deeded by Belle Wilcox to the defendant, as of the date of the judgment note. The undisputed evidence is that this was the consideration of the judgment. The defendants then showed that in 1854 Hosea Harmon, who had become the purchaser of this land, executed a mortgage on the same to John F. McPherson, who

was trustee for the estate of Israel Cayle. The mortgage seemed to have laid quiet for many years. But upon the mortgage judgment was obtained, and execution was issued and the land that formed the consideration of this judgment was sold to D. I. Ball, and he took possession; and the defendants yielded up to the paramount title under the mortgage.

We say to you that standing thus, upon the undisputed evidence, the defendants have shown an entire failure of the consideration. The deed that they received was a warranty deed. By virtue of the encumbrance existing upon the property at the time of the making of the deed by Mrs. Wilcox to the defendants, the title was swept away, so that the defendants obtained nothing by the deed. The consideration of the judgment failed. This entitles the defendants to a verdict, unless there has been something in the conduct of the defendants that estops them or prevents them from asserting a defense. Upon the part of the plaintiffs, that is the equitable plaintiffs, it is alleged that so far at least as Mr. Rhodes is concerned, that he acquired a good title to the judgment, by reason of having become the purchaser of it upon the allegation of Nason Rowley that there was no defense to it.

We say that in order to constitute an estoppel it must appear by clear evidence, by evidence at least satisfactory to the jury, that the assignee Rhodes, or the assignee Clark, was misled, or led into the purchase of the judgment, and the expenditure of money, by the conduct of the defendants.

There are many cases that are exclusively for the determination of the jury. There are others that are exclusively for the determination of the court. We think this is a case where the responsibility of determining it aright rests with the court. And if we are in error, the supreme court will correct us. We then say to you that upon the undisputed evidence in the case, your verdict should be in favor of the defendants. We think there is no evidence in the case that in justice or equity estops the defendants from setting up the defense that they beyond all question had as against the legal plaintiff, Mrs. Wilcox.

Verdict and judgment for defendants.

*Allen & Higgins,* and *R. Brown,* for plaintiff in error.—The court erred in rejecting the testimony contained in the first three specifications. McMullen v. Wenner, 16 Serg. & R. 18,

16 Am. Dec. 543; Edgar v. Kline, 6 Pa. 327; Elliott v. Callan, 1 Penr. & W. 24; Chapman v. Chapman, 59 Pa. 214; Griffiths v. Sears, 112 Pa. 523, 4 Atl. 492.

In Miller's Appeal, 84 Pa. 391, it is held that where one, by some positive act or declaration, influences or induces another to purchase, both parties acting in good faith, and a loss occurs it must be borne by him whose act or declaration occasioned it. The doctrine of estoppel by matter in pais has been greatly extended by the courts in modern times. The instruction of the court to the jury, that the evidence did not constitute an estoppel, is not in accordance with the above cited authorities, and the modern doctrine applied to acts which constitute an estoppel.

If the defendants were estopped as to Rhodes, they are estopped as to his assignees. Griffiths v. Sears, 112 Pa. 523, 4 Atl. 492; Ashton's Appeal, 73 Pa. 153.

As to the fifth specification, if the Rowleys had the money in their hands to pay the Harmon mortgage, then their duty was to pay it, and they could be relieved to the extent of the payment and their necessary expenses, and no more. McGinnis v. Noble, 7 Watts & S. 454.

As the defense is purely equitable, it seems right and just that their defense be confined to the amount on the Harmon mortgage, and that there be a recovery against them for the balance of the judgment. This principle seems to be sustained by Tod v. Gallagher, 16 Serg. &. R. 261, 16 Am. Dec. 571, and Harper v. Jeffries, 5 Whart. 26.

*Dinsmoor & Cable,* for defendants in error.—The mortgage of H. Harmon to John F. McPherson, trustee, which swept away the land for which the judgment note was given, was of record. It described the land mortgaged with precision. Mortgages are within the provisions of the recording acts, and are as much notice to the world as deeds. And every person is as much bound to take notice of them. "The recording of a mortgage is constructive notice to the world." Evans v. Jones, 1 Yeates, 172.

Estoppel has for its indispensable ingredient fraud, either actual or implied from culpable negligence.

"But it is obvious there can be no such fraud where the purchaser or other actor was, or ought to have been, acquainted with the subject of his action, or even had the means of knowledge and

neglected to avail himself of them. Hepburn v. M'Dowell, 17 Serg. & R. 383, 17 Am. Dec. 677. . . . To the constitution of this species of estoppel [*in pais*] at least three ingredients seem to be necessary: First, misrepresentation or wilful silence by one having knowledge of the fact; second, that the actor, having no means of information, was, by the conduct of the other, induced to do what otherwise he would not have done; and thirdly, that injury would ensue from a permission to allege the truth. And these three things must appear affirmatively." Com. v. Moltz, 10 Pa. 527, 51 Am. Dec. 499; Crest v. Jack, 3 Watts, 238, 27 Am. Dec. 353; Dungan v. American Life Ins. & T. Co. 52 Pa. 257.

In M'Mullen v. Wenner, 16 Serg. & R. 18, 16 Am. Dec. 543, at the time of the transfer of his obligation, the obligor was not entrapped, or sought to be, by any question tending to lead him away from the point as to whether he had any defense—with his mind directed squarely to that point, he said the bonds were his and he was willing to pay them.

Edgar v. Kline, 6 Pa. 327, was the case of concealment of a defense not shown by any record importing notice, or of which the purchaser had equal means with the obligor of becoming acquainted.

Elliott v. Callan, 1 Penr. & W. 24, was the case of a new and distinct promise by obligor to pay, upon the faith of which the purchaser took the assignment of the single bill.

Decker v. Eisenhauer, 1 Penr. & W. 476, was a case of actual knowledge, and concealment of the same, of the mortgage afterwards attempted to be set up as a defense.

Chapman v. Chapman, 59 Pa. 214, was also a case of concealment of a fact known, and subsequently sought to be taken advantage of.

Griffiths v. Sears, 112 Pa. 523, 4 Atl. 492, was a case in our favor, to the extent that it holds that the purchaser of a judgment is ordinarily charged with the inspection of the record of the judgment, and is therefore, in general, affected by notice of any rights which it discloses. If charged with the inspection of the record of the judgment itself, why not also with that of any other public record affecting it?

The land having been sold to a stranger upon the paramount lien, and defendants not having in their hands, of the consideration of their purchase, a sum sufficient to extinguish the en-

cumbrance, they were not bound to extinguish it. And the phrase, "not having money in their hands," in this connection, signifies not having money that is due and payable, or in arrears, as distinguished from money not yet due by the terms of their contract. Dentler v. Brown, 11 Pa. 295; M'Ginnis v. Noble, 7 Watts & S. 454; Harper v. Jeffries, 5 Whart. 37.

OPINION BY MR. JUSTICE STERRETT:

The judgment against defendants having been opened for the purpose of permitting them to show failure of consideration of the note on which it was entered, evidence was introduced tending to show that it was given for the purchase money of land on which there was then an outstanding mortgage executed by a prior owner of the land; that in an action of scire facias afterwards brought on the mortgage, with notice to the terre-tenant, judgment was obtained and the land sold thereon to a stranger.

To meet the defense thus interposed, the equitable plaintiff introduced evidence for the purpose of showing that defendants were estopped from setting up failure of consideration as against him and his assignor Daniel Rhodes. On that subject Rhodes testified as follows:

"Before I took a transfer of the judgment, I saw Nason Rowley and had a talk with him about the judgment; had the talk before I bought it. I told him that I talked of taking the note; that Mr. Parker and I talked of trading. I should have said judgment, and I thought before I took it I would go and see what they had to say about it, and see if it was all right, and see the property. I had not been at his house before. We talked some about it. He told me what he and his son had and said that the note was all right, that it was good. I took the judgment on the strength of the statement made by Nason Rowley. If he had not made this statement that it was good I should not have taken it. . . . Mr. Rowley showed me what property they had, and in that conversation, he told me the judgment was good. In this conversation with Mr. Rowley he said there was nothing. . . . He said there was nothing against them, the place was clear. We were talking about the judgment; he said there was nothing against them, the place was clear."

In view of this and other evidence, the equitable plaintiff, in his first point, requested the court to charge: "That if prior to

the purchase of the judgment by Rhodes from Parker, Rhodes went to Nason Rowley to inquire about the judgment, and whether there was anything against it, and if there was not he would purchase it, and intended to sell it to Clark; and in answer to the inquiry Rowley informed him that it was good, and there was nothing against it; and on the faith of that representation, Rhodes purchased and paid a valuable consideration for it. Rowley is now estopped from showing that any encumbrance existed against the land for which the judgment was given, or from showing any defense to the payment of the judgment."

This point was substantially refused by the court saying: "Whether correct or not in the abstract, we say to you that there is no evidence that estops defendants from setting up the failure of the consideration of the judgment," and also charging the jury "that upon the undisputed evidence in the case, their verdict should be in favor of the defendants." In thus withdrawing the case from the jury, and directing a verdict for defendants, the learned judge erred.

The evidence on which plaintiff's first point is predicated was wholly verbal, and therefore proper for the consideration of the jury. If they were satisfied as to the truth of the facts recited in the point, the legal conclusion sought to be drawn therefrom, by plaintiff would necessarily follow; and if Nason Rowley was thereby estopped as to Rhodes, he was also estopped as to his assignee, the equitable plaintiff.

It is unnecessary to consider the remaining specifications of error.

Judgment reversed and a *venire facias de novo* awarded